In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00117-CR


______________________________




MICHAEL ANTHONY EAST, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 263rd Judicial District Court


Harris County, Texas


Trial Court No. 498468




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Michael Anthony East appeals from the revocation of his community supervision. East was
convicted in 1990 of aggravated sexual assault. A jury convicted him and set his punishment at ten
years' confinement, with a recommendation he be placed on community supervision. The State filed
a motion to revoke. The trial court granted the motion to revoke and imposed the original sentence
of ten years' confinement. 

 On appeal, East raises two issues:

 1. The trial court violated his due process rights when it prejudged and predetermined his
sentence.

 2. His punishment is so excessive that it constitutes cruel and unusual punishment.

 At the revocation hearing, the State called two witnesses: Kellye Caldwell, custodian of the
records of the Harris County Community Supervision and Corrections Department, and R.L.
Schields, fingerprint expert for the Harris County Sheriff's Department. Caldwell stated that in 1990,
East was placed on community supervision for ten years after a conviction for sexual assault of a
child. Caldwell testified that East had been fully informed of the required conditions of his
community supervision, as shown by his signature on documents. Among the conditions of
community supervision were that East remain in Harris County, that he report each month to his
community supervision officer, that he maintain suitable employment, that he participate in sexual
abuse counseling at Hope Counseling Center, and that he pay certain fines. After September 1992,
the records showed that East no longer made his monthly visits to the community supervision officer,
failed to provide proof of continuing employment, failed to make payments on his fine, and no
longer could be found in Harris County. He had recently been extradited from the State of New
York. Schields took East's fingerprints and compared them to those contained in East's original file;
he concluded that they were prints of the same person. 

 East testified in his own behalf. He testified that from the date his community supervision
was imposed he complied with the requirements of his community supervision. He testified that
he was told by a counselor at the Hope Counseling Center that she was going to tell the community
supervision officer that he was not participating in the counseling sessions, even though he says he
was. He was upset by this, so he left, first going to Jamaica, and then to New York. East testified
that while in New York he attended a technical school and obtained a welding certificate. On cross-examination, East admitted that he stopped reporting to his community supervision officer at that
time, that he no longer participated in counseling, and that he in fact left Harris County. 

 East first contends his federal and state due process rights were violated because the trial
court allegedly did not take into account mitigating circumstances in imposing punishment, and in
fact predetermined his punishment before any evidence was presented, and punished him because
he forced the trial court to hold a hearing.

 A trial court's arbitrary refusal to consider the entire range of punishment available for the
violation of a criminal law would constitute a denial of due process. McClenan v. State, 661 S.W.2d
108, 110 (Tex. Crim. App. 1983); Jefferson v. State, 803 S.W.2d 470, 471 (Tex. App.-Dallas 1991,
pet. ref'd); Cole v. State, 757 S.W.2d 864, 865 (Tex. App.-Texarkana 1988, pet. ref'd). Where a
trial court in a community supervision proceeding announces his predetermined intent to impose the
maximum or an extremely harsh sentence before any mitigating evidence might be presented, a
defendant would be denied due process. See Howard v. State, 830 S.W.2d 785 (Tex. App.-San
Antonio 1992, pet. ref'd); see also Jefferson v. State, 803 S.W.2d at 472, 473.

 The record in our case, however, does not indicate any predetermined disposition of the trial
court to assess the maximum or a more harsh sentence. The judge who imposed the original
sentence was no longer on the bench; a different judge imposed the sentence after revocation. There
is nothing to show that the original trial court gave any warning to East of its intention to impose a
harsher sentence on revocation, and there is nothing in the record of the revocation hearing indicating
that the court hearing the revocation proceeding was leaning one way or the other, or was inclined
to impose any particular sentence. The evidence at the hearing shows that East admitted he left the
state and that he did not comply with the terms of his community supervision. His mitigating
evidence consisted of his testimony that, in fear his probation might be unjustifiably revoked, he fled
the jurisdiction, and that he obtained a welding certificate at a technical school while in New York. 
The trial judge imposed the punishment originally recommended by the jury.

 East also contends that the ten-year sentence imposed by the trial court constitutes cruel and
unusual punishment and is disproportionate to the offense. 

 East was originally sentenced on January 31, 1990. The punishment was ten years'
confinement and a $10,000.00 fine, with a recommendation of community supervision. Aggravated
sexual assault is a first-degree felony, Tex. Pen. Code Ann. § 22.021(e) (Vernon Supp. 2002), 
punishable by imprisonment for life or for any term of years not more than ninety-nine. Tex. Pen.
Code Ann. § 12.32(a), (b) (Vernon 1994). 

 Clearly, the sentence imposed is within the range of punishment authorized by the
Legislature. As long as the punishment is within this statutory range, the punishment is not
excessive, cruel, or unusual. Latham v. State, 20 S.W.3d 63, 68 (Tex. App.-Texarkana 2000, pet.
ref'd).

 We do recognize that a prohibition against grossly disproportionate punishment survives
under the Eighth Amendment to the United States Constitution, apart from any consideration of
whether the punishment is within the range established by statute. U.S. Const. amend. VIII; 
Latham v. State, 20 S.W.3d at 68-69; Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.-Texarkana
1999, no pet.). However, any such claim in this case was waived because East failed to object or
otherwise indicate in the trial court his disapproval of the sentence on these grounds. Jackson v.
State, 989 S.W.2d at 844-45. Even if such a claim had been preserved, it would fail because East's
brief fails to inform us of the facts of the underlying offense for which he was convicted in 1990. 
In order to assess a claim of disproportionality, we initially make a threshold comparison of the
gravity of the offense against the severity of the sentence. Id. at 846. We have searched the record
and can find no document that informs us what happened to cause East to be convicted. Without
such facts, the initial threshold comparison cannot be made.

 We find no reversible error. 

 The judgment of the trial court is affirmed.


 William J. Cornelius

 Chief Justice


Date Submitted: January 9, 2002

Date Decided: January 30, 2002


Publish



Roman', serif">Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            A simple automobile accident has resulted in a class-action lawsuit challenging settlement
practices of Allstate Insurance Company and several of its affiliated companies.



            In 1997, Melvin Block allegedly caused an automobile accident which injured Joshua
Stafford. Stafford, through his mother, Rebecca Stafford sued and then agreed to a settlement with
Block and his insurer, Allstate Insurance Company. As part of the settlement, Stafford signed a
document releasing Block, Allstate, and Allstate's "affiliates" from all claims arising out of the
accident. Four years after signing the release, Stafford sued Allstate and several of its affiliates as
class representative of a purported class of persons who had been involved in structured settlements
with one or more of the Allstate entities. The trial court granted summary judgment in favor of
Allstate and its affiliates based on the affirmative defense of release.
            We affirm the summary judgment favoring appellees Allstate Insurance Company, Allstate
Life Insurance Company, and Allstate Settlement Corporation—the "Transaction Defendants"—and
reverse the summary judgment as to appellees Allstate Indemnity Company, Allstate Property and
Casualty Company, Allstate County Mutual Insurance Company, and Allstate Texas Lloyds—the
"Nontransaction Defendants"—because (1) the release covers the settlement-related claims asserted
in the present lawsuit, (2) the release releases the Transaction Defendants, and (3) Stafford has
alleged sufficient facts to support personal standing as to the Nontransaction Defendants.
(1)       The Release Covers the Settlement-related Claims Asserted in the Present Lawsuit
            Summary judgment is properly granted only when the movant establishes that there are no
genuine  issues  of  material  fact  and  that   it  is  entitled  to  judgment  as  a  matter  of  law.  Tex.
R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Mo. Pac. R.R. v.
Lely Dev. Corp., 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd). Because the propriety
of a summary judgment is a question of law, we review the trial court's decision de novo. Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). The standards for review of a traditional
summary judgment are well established: (1) the movant must show that there is no genuine issue
of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there
is a disputed material fact issue precluding summary judgment, the court must take evidence
favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in
favor of the nonmovant and resolve any doubts in the nonmovant's favor. Tex. R. Civ. P. 166a(c);
Pustejovsky v. Rapid-Am. Corp., 35 S.W.3d 643, 645–46 (Tex. 2000); Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548–49 (Tex. 1985). 
            A defendant seeking summary judgment must, as a matter of law, negate at least one element
of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative
defense. Mo. Pac. R.R., 86 S.W.3d at 790. Not until the defendant establishes its right to summary
judgment does the plaintiff bear the burden of raising a fact issue. Id. If a trial court's order granting
summary judgment does not specify the basis for the court's ruling, the summary judgment will be
affirmed if any of the theories advanced by the movant are meritorious. Carr v. Brasher, 776
S.W.2d 567, 569 (Tex. 1989).
            The settlement agreement provided that Stafford would receive a set of structured payments
over a number of years. In return, Stafford released Block and Allstate from any future claims. To
pay for the settlement, Allstate was given the right to purchase an annuity from its affiliate, Allstate
Life Insurance Company.
            The crux of the present lawsuit lies on the allegation that Allstate engaged in unlawful
behavior by forcing Stafford to accept an annuity from one of Allstate's affiliates rather than allowing
her to choose where to purchase an annuity to fund her settlement payments. Stafford also alleges
that Allstate charged undisclosed fees related to the purchasing of the annuity. Stafford's suit against
the Allstate companies alleges violations of the Texas Free Enterprise and Antitrust Act of 1983, the
Texas Deceptive Trade Practices Act, and the Texas Insurance Code, as well as conspiracy, unjust
enrichment, and conversion. Stafford contends these claims do not fall within the subject matter of
the settlement agreement release. We disagree.
            A release is an agreement or contract in which one party agrees that a duty or obligation owed
by the other party is discharged immediately on the occurrence of a condition. Dresser Indus., Inc.
v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993); Williams v. Glash, 789 S.W.2d 261, 264
(Tex. 1990); Nat'l Union Fire Ins. Co. v. Ins. Co. of N. Am., 955 S.W.2d 120, 127 (Tex.
App.—Houston [14th Dist.] 1997), aff'd, Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co., 20
S.W.3d 692 (Tex. 2000). A release extinguishes a claim or cause of action and bars recovery on the
released matter. Dresser Indus., 853 S.W.2d at 508.
            To release a claim effectively, the releasing instrument must "mention" the claim to be
released. Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991). Any claims not
"clearly within the subject matter" of the release are not discharged, even if those claims exist when
the release is executed. Id. It is not necessary, however, for the parties to anticipate and explicitly
identify every potential cause of action relating to the subject matter of the release. Keck, Mahin &
Cate, 20 S.W.3d at 698. Although releases generally contemplate claims existing at the time of
execution, a valid release may also encompass unknown claims and damages that develop in the
future. Id.
            Like any other agreement, a release is subject to the rules of construction governing contracts,
including the tenet that courts will not rewrite agreements to insert provisions parties could have
included or to imply restraints for which they have not bargained. Tenneco, Inc. v. Enter. Prods. Co.,
925 S.W.2d 640, 646 (Tex. 1996); Williams, 789 S.W.2d at 264. When construing a contract, courts
must give effect to the true intentions of the parties as expressed in the written instrument. Lenape
Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996). The contract must be read
as a whole rather than by isolating a certain phrase, sentence, or section of the agreement. State
Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995). The language in a contract is to
be given its plain grammatical meaning unless doing so would defeat the parties' intent. DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).
            Stafford  argues  the  release  is  limited  to  personal  injury claims  arising  out  the October
16, 1997, automobile accident. In support of this, Stafford points to language in the release that
states it is limited to claims which accrue, "on account of, or in any way growing out of, or which
are the subject of, the Complaint." 
            By its language, the release applies to, "any and all past, present or future claims, . . . whether
based on a tort, contract or other theory of recovery, . . . which may hereafter accrue or otherwise be
acquired on account of, or in any way growing out of, or which are the subject of the Complaint."


 
The release is not limited to particular types of claims that resulted from the accident. Nor is it
limited solely to claims that existed at the time the release was executed. The release covers all
claims, based on any theory of recovery, accruing at any time in the past or future, that grow out of
the accident. The release shows no intent to be limited in the manner which Stafford suggests. 
Absent any language of limitation, we cannot supply such a narrow interpretation.



            The claims in Stafford's present lawsuit are based on actions taken by Allstate during the
settlement negotiations and actions taken as a result of the settlement. The settlement negotiations
and the settlement itself were a direct result of the automobile accident, i.e., they would not have
occurred but for the accident. Therefore, Stafford's claims based on the settlement and settlement
negotiations grew out of the accident. In fact, Stafford's own petition states, "Specifically, the claims
arise out of the conduct in the underlying lawsuit filed in Jefferson County, Texas." The release bars
any claims that grew out of the accident. Hence, the release contained in the settlement agreement
bars Stafford's claims against all parties that were released.
 
 
 
(2)       The Release Covers the Transaction Defendants
            Though Stafford contends the release is applicable only to Allstate Insurance Company, we
conclude the release is applicable to Allstate Insurance Company, Allstate Settlement Corporation,
and Allstate Life Insurance Company—the Transaction Defendants.
            A release discharges only those persons or entities that it names or specifically identifies. 
McMillen v. Klingensmith, 467 S.W.2d 193, 196 (Tex. 1971). One can claim the protection of a
release only if the release refers to him or her by name or with such descriptive particularity that his
or her identity or connection with the event is not in doubt. Duncan v. Cessna Aircraft Co., 665
S.W.2d 414, 420 (Tex. 1984). "The McMillen requirement of specific identification is not met
unless the reference in the release is so particular that a stranger could readily identify the released
party." Id. at 419.
            By its own language, the release signed by Stafford applies to any "subsidiaries, affiliates,
partners, predecessors and successors in interest and assigns" of Allstate Insurance Company. 
Elsewhere in the settlement agreement and release, Allstate is given the right to assign its obligation
to Allstate Settlement Corporation. Allstate is also given the right to purchase an annuity from
Allstate Life Insurance Company. 
            Given their similar names and their inclusion within the settlement agreement itself, even a
stranger to the transaction would have little trouble identifying Allstate Settlement Corporation and
Allstate Life Insurance Corporation as affiliates of Allstate Insurance Company. Therefore, the
release is applicable to both Allstate Life Insurance Corporation and Allstate Settlement Corporation,
as well as Allstate Insurance Company.
(3)       Stafford Has Alleged Sufficient Facts to Support Personal Standing as to the Nontransaction
Defendants

            The parties agree that the release is not applicable to any of the Nontransaction
Defendants—Allstate Indemnity Company, Allstate County Mutual Insurance Company, Allstate
Texas Lloyds, and Allstate Property and Casualty Company. The only question, then, is whether
Stafford has pled sufficient facts to establish standing against those parties. We conclude she has.
            Because standing is a component of subject-matter jurisdiction, we consider the plaintiffs'
standing under the same standard by which we review subject-matter jurisdiction generally. That
standard requires the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to
hear the case. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). We
construe the pleadings in favor of the plaintiffs and look to the pleaders' intent. Id. If the plaintiffs
lack standing, the trial court has no jurisdiction over the merits of the claim, and the entire cause
must be dismissed. Bell v. Moores, 832 S.W.2d 749, 753–54 (Tex. App.—Houston [14th Dist.]
1992, writ denied).
            To establish standing, a person must show a personal stake in the controversy. Hunt v. Bass,
664 S.W.2d 323, 324 (Tex. 1984). That is, they must allege personal injury fairly traceable to the
defendant's unlawful conduct and likely to be redressed by the requested relief. Brown v. Todd, 53
S.W.3d 297, 305 (Tex. 2001), citing Allen v. Wright, 468 U.S. 737, 751 (1984).
            Stafford alleges that a conspiracy existed among all of the named appellees. Stafford's 
third amended petition states,
Each of the Defendants participated in the misconduct complained of herein, as a
primary participant, co-conspirator and/or aider-and-abettor. Defendants combined
among themselves to accomplish a shared unlawful purpose – to make illegal profits
by coercing Plaintiffs into accepting illegal structured settlements funded by annuities
from Allstate Life and Allstate Settlement with mutual aid and a tacit understanding
in carrying it out, and committed the other acts alleged in this Petition and have
damaged Plaintiff and the Class Members. Defendants are each responsible for all
wrongdoing done by each and any of the other conspirators in furtherance of the
unlawful combination(s).

Stafford further alleges that each appellee harmed Stafford personally by participating in the alleged
conspiracy. Specifically, Stafford alleges in her petition,
 
Each of the Defendants repeatedly and knowingly coerced Plaintiff and the Class into
accepting structured settlements funded by annuities at lower than market and
competitive rates, charged excessive fees and commissions, funded the annuities at
amounts less than agreed to by Plaintiffs, and paid or accepted illegal
rebates/kickbacks.

Additionally, the petition alleges,
 
Defendants' wrongful plan, scheme and common course of conduct was designed to
and did induce Plaintiffs and other members of the Class to enter into structured
settlements funded by annuities with Allstate Life under unlawful circumstances, and
through fraudulent means, to the detriment of Plaintiff and the Class members.

This language, as well as other language in Plaintiff's Third Amended Petition, is sufficient to allege
that all the named appellees caused Stafford harm, not just those covered by the release. Although
the remaining appellees are not alleged to have been directly involved in the original settlement
agreement and release with Stafford, they are alleged to have harmed Stafford through their
participation in a concerted scheme or plan.



            Stafford has alleged personal injury directly traceable to the remaining appellees' conduct. 
Therefore, she has pled sufficient allegations to support personal standing against the remaining
appellees. As noted above, the parties do not claim that Stafford is otherwise barred from bringing
suit against the remaining appellees.
            Accordingly, we reverse the summary judgment as to Allstate Indemnity Company, Allstate
Property and Casualty Company, Allstate County Mutual Insurance Company, and Allstate Texas
Lloyds, and remand to the trial court for further proceedings.
Conclusion
            Because the release signed March 22, 1999, covers the claims made by Stafford in the present
suit and covers Allstate Insurance Company, Allstate Life Insurance Company, and Allstate
Settlement Corporation, we affirm the summary judgment in favor of those appellees. But, because
Stafford has alleged sufficient facts to establish standing as to Allstate Indemnity Company, Allstate 
Property and Casualty Company, Allstate County Mutual Insurance Company, and Allstate Texas 
Lloyds, we reverse the summary judgment in favor of those appellees and remand this case to the
trial court for further proceedings consistent with this opinion.
 

                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          September 12, 2005
Date Decided:             October 18, 2005