**Kenneth Daniel LATHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00048–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 29, 2000.

Decided March 10, 2000.

Discretionary Review Refused
Aug. 30, 2000.

Kaylin D. Kluge, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., James H. Elliott, Bowie County Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Kenneth Daniel Latham was convicted in a bench trial of possessing 400 grams or more of methamphetamine. His punishment was set at thirty-five years' confinement. Latham raises three issues on appeal: 1) whether the trial court committed reversible error in denying Latham's motion for continuance, 2) whether the evidence is legally sufficient to support the conviction, and 3) whether the punishment assessed is against the great weight of the evidence, and amounts to cruel and unusual punishment.

On the day of trial, Latham filed a sworn motion for continuance alleging that he had tried unsuccessfully to locate Judy Martin, a co-defendant,[1] who would be a material witness. Latham further alleged in the motion that Martin's testimony would be material to his possible defense of entrapment. The trial court denied the motion.

The State argues that Latham did not preserve this issue for review because he did not file a motion for new trial. The only means of preserving error in the overruling of a motion for continuance due to the absence of a witness is a motion for new trial. *Taylor v. State*, 612 S.W.2d 566, 569 (Tex.Crim.App. [Panel Op.] 1981); *Burns v. State*, 923 S.W.2d 233, 237 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd); *Hackleman v. State*, 919 S.W.2d 440, 452 (Tex.App.-Austin 1996, pet. ref'd, untimely filed); *Duncan v. State*, 899 S.W.2d 279, 282 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd). Latham did file a motion for new trial, but he did not include in his motion a complaint that his motion for continuance was improperly denied. Thus,

---

1. Judy Martin, at the time of trial, had active felony warrants against her, and police were actively seeking her whereabouts.

we conclude that Latham failed to preserve the alleged error.

The State argues that even if Latham had preserved his complaint for appellate review, his failure to include in his motion the elements required by TEX.CODE CRIM. PROC. ANN. art. 29.06 (Vernon 1989) precludes appellate relief.

Latham's request for a continuance, filed the day of trial, stated, in pertinent part, as follows:

> Further counsel for Defendant has tried to locate a person believed to be a material witness for the Defendant, Judy Martin. It is believed that Judy Martin would and/or should have knowledge of and testify that she contacted Defendant at the request of the [Bi-State Narcotics] Task Force, that she provided all the ingredients and chemicals to the Defendant which she obtained from the Task Force, and that she turned the Defendant in to the Task Force. Consequently, it is believed that Judy Martin's testimony is material to Defendant's possible defense of entrapment. Thus counsel for Defendant needs more time to adequately prepare and to further locate [the witness and] investigate Defendant's possible defenses in this matter. That without the counsel for Defendant being allowed

more time to prepare, the Defendant would be denied his right to effective assistance of counsel.

Article 29.06 sets forth the requirements for a defendant's first motion for a continuance based on the absence of a witness.[2]

The State contends that Latham's motion fails to state Martin's residence or that her residence is unknown, does not set out facts from which the trial court could have determined whether diligence was used to procure Martin's presence at trial, and does not show that there is a reasonable expectation that Martin's attendance can be procured at a future trial date.

 The State's contentions are correct. Latham's motion merely states that he has tried to locate the witness and does not set forth any specifics of those efforts. Thus, the trial court could not determine whether Latham used diligence. The motion makes no statement as to Martin's residence, nor does it state that her residence is unknown. The motion also fails to notify the trial court that there is a reasonable expectation that Martin's presence could be procured at a future trial date. The motion also fails to state that the witness is not absent by the procurement or consent of the defendant, and that

---

2. TEX.CODE CRIM. PROC. ANN. art. 29.06 (Vernon 1989) provides:

> In the first motion by the defendant for a continuance, it shall be necessary, if the same be on account of the absence of a witness, to state:
>
> 1. The name of the witness and his residence, if known, or that his residence is not known.
>
> 2. The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue.
>
> 3. The facts which are expected to be proved by the witness, and it must appear to the court that they are material.
>
> 4. That the witness is not absent by the procurement or consent of the defendant.
>
> 5. That the motion is not made for delay.

> 6. That there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. The truth of the first, or any subsequent motion, as well as the merit of the ground set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If a motion for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the motion was of a material character, and that the facts set forth in said motion were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term.

the motion is not made for delay. Failure to set out all the requirements of Article 29.06 in a motion for a continuance due to the lack of a witness renders the motion inadequate. *Gonzales v. State,* 505 S.W.2d 819 (Tex.Crim.App.1974); *Reese v. State,* 905 S.W.2d 631, 636 (Tex.App.-Texarkana 1995, pet. ref'd, untimely filed). The determination of whether to grant a continuance in such circumstances is vested in the sound discretion of the trial court. Reversal of this determination is justified only when it is shown that the trial court has abused its discretion. *Hughes v. State,* 962 S.W.2d 89, 90 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd).

As Latham's motion did not meet the legal requirements, the trial court did not abuse its discretion in overruling it.

■ Latham also contends that the evidence to support his conviction is legally insufficient. In reviewing a legal insufficiency claim, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found beyond a reasonable doubt all of the essential elements of the charged offense. *Roise v. State,* 7 S.W.3d 225, 232 (Tex.App.-Austin 1999, no pet. h.) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App.1996)).

■ The evidence, viewed in the light most favorable to the verdict, shows that Officers Lance Hall and Bobby Thomason of the Bi–State Narcotics Task Force received a tip that a methamphetamine lab was operating at Latham's residence. The two officers drove to the location and observed a female sitting in front of a storage building in the backyard of the residential property. They stopped and approached the house. Hall went to the rear of the property and detained the female, while Thomason went to the front. Hall brought the female to the front, and the officers and the female entered the house. Inside, they saw two small children and an older female. They asked if Latham was there and were told that he was not. Thomason asked permission to search through the house to verify this. As he started down the hall, Thomason looked into a bathroom and saw a pile of laundry on the floor. He put his foot out to kick the laundry aside and found that Latham was hiding under the pile. After he was discovered, Latham cooperated with the officers and signed a consent to search form. Hall and Thomason went to the shed behind the house, and immediately noticed a very strong smell of ammonia. Hall, a trained narcotics officer, testified that such an odor is one associated with the manufacture of methamphetamine. The odor was so overpowering that the officers could not enter the shed. They called for Sergeant Robert Stinson of the Texas Department of Public Safety Narcotics Division, who had received special and advanced training in the area of methamphetamine labs. After Stinson's arrival, the officers were still unable to enter the shed because of the strong smell, and they had to get special air packs from the Texarkana Fire Department in order to enter.

On entering the shed, the officers saw the ingredients and equipment required for the manufacture of methamphetamine, and noted that the "cook" or "reaction" was still in progress. Latham appeared to have been injured, and he told the officers that he had been burned by a flash fire and had inhaled the fumes before they arrived. Latham and the female, later identified as Judy Martin, had both apparently been injured and were not arrested at that time so they might receive medical attention. The equipment and ingredients found at the Latham house were sent to the DPS laboratory in Tyler. Chemist Shanna Hampton testified that the substance found at the location was methamphetamine, and the weight was 672.07 grams, including adulterants and dilutants. Latham, both at trial and on appeal, has challenged the findings because it was admitted that the methamphetamine found at

the shed was not in the crystal or powdered form required for distribution and use. The evidence shows that it would have taken another two hours to complete the process of getting the substance into usable form. In the liquid form as discovered by the officers, the substance was poisonous and not usable. However, the expert witnesses for the State, one an experienced narcotics officer and the other a chemist, testified without contradiction that the substance was, chemically, methamphetamine. The officers obtained from Latham several pieces of paper on which an apparent recipe for methamphetamine was written. Latham said he got the papers from an individual in Fouke, Arkansas.

Latham took the stand and testified in his own behalf. He admitted that he was cooking methamphetamine, that he had gotten the recipe from an individual in Fouke, Arkansas, and that he had undertaken the project at the request of Judy Martin. He stated that Martin supplied him with all of the necessary ingredients, and that he undertook the project out of curiosity. He also opined that he had been "set up" by the Bi–State Narcotics Task Force and claimed that Judy Martin was an informant. The officers denied those charges. Latham acknowledged that the liquid substance was methamphetamine, that he possessed it in Bowie County, and that what he was doing was illegal.

■ To support a conviction for possession of a controlled substance, the State must prove beyond a reasonable doubt that: 1) the defendant exercised actual care, control, and management over the contraband; and 2) the defendant knew the substance in his possession was contraband. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Wallace v. State*, 955 S.W.2d 148, 150 (Tex.App.-Beaumont 1997, no pet.).

The evidence produced by the State was sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, all of the elements of the charged offense. Moreover, in his own testimony, Latham admitted all of the necessary elements. The only real question in dispute-whether the substance, because it was not yet in usable form, constituted methamphetamine within the meaning of the statute-was settled by the uncontradicted testimony that, chemically speaking, the substance was methamphetamine in an amount over 400 grams.

Latham also contends that the thirty-five-year sentence imposed by the trial court amounts to cruel and unusual punishment under the Eighth Amendment to the United States Constitution, and is contrary to the great weight of the evidence.

Latham argues that the sentence is excessive because he had no prior felony convictions, no weapon was involved, he had been drinking the night before and during the incident in controversy, he supported his parents and was the sole support of his children, and he had no intent to complete the process, i.e., he did not intend to make methamphetamine in usable form.

■ The sentence imposed by the trial court is within the statutory range applicable to this offense.[3] Texas courts have traditionally held that as long as the punishment is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *See, e.g., Jordan v. State*, 495 S.W.2d 949, 952 (Tex.Crim.App.1973). However, in *Jackson v. State*, 989 S.W.2d 842 (Tex.App.-Texarkana 1999, no pet.), we recognized that a prohibition against grossly disproportionate punishment does

---

**3.** Tex. Health & Safety Code Ann. § 481.115(f) (Vernon Supp.2000) provides:

An offense under Subsection (a) is punishable by imprisonment in the institutional division of the Department of Criminal Justice for life or for a term of not more than 99 years or less than 10 years ... if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, 400 grams or more.

survive under the Eighth Amendment apart from any consideration of whether or not the punishment assessed is within the range established by the Legislature.[4] We initially make a threshold comparison of the gravity of the offense against the severity of the sentence, and then ask whether the sentence is grossly disproportionate to the offense. Only if we find such a gross disproportionality do we then compare this sentence to sentences imposed for similar crimes in this and other jurisdictions. *Jackson v. State*, 989 S.W.2d at 846.

■■■ The State argues that the sentence is not excessive, cruel, or unusual in light of the facts that Latham, although charged with only possession of methamphetamine, was in fact manufacturing it; that if he had not been interrupted by a flash fire, he would have continued the process; that he was in possession of a recipe when Judy Martin approached him to manufacture the substance and told him he was "sitting on a gold mine"; that he supplied the ammonia, a necessary ingredient; and that he was found hiding in a pile of laundry when the police arrived. The State also contends the sentence is not disproportionate in view of Latham's previous possession of methamphetamine, and that although Latham expressed great concern for his children, he was cooking a poisonous and explosive substance in close proximity to their residence. We also note from the record that Latham testified he possessed only 35 grams, as opposed to the 472 grams alleged. Yet, assuming for the sake of argument that Latham had only 35 grams, he admitted that such an amount would provide over 100 shots of methamphetamine.

Considering all these facts, we conclude that the punishment set by the trial court is not grossly disproportionate to the facts in the case. We are not required, therefore, to compare the punishment with the punishments imposed for similar crimes in this and other jurisdictions. Moreover, Latham failed to provide any such evidence either in the trial court or in this Court.

For the reasons stated, we affirm the judgment.

---

4. A court's proportionality analysis under the Eighth Amendment should be guided by 1) the gravity of the offense and the harshness of the penalty; 2) the sentences imposed on other criminals in the same jurisdiction; and 3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637, 650 (1983). Only if we infer that the sentence is grossly disproportionate to the offense will we then consider the remaining factors of the *Solem* test and compare the sentence received to sentences for similar crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions. *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992); *see also Davis v. State*, 905 S.W.2d 655, 664–65 (Tex.App.-Texarkana 1995, pet. ref'd).