In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00186-CR


______________________________




JOSE ANTONIO RODRIGUEZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 27007-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Jose Antonio Rodriguez appeals a trial court judgment adjudicating him guilty of deadly
conduct, Tex. Pen. Code Ann. § 22.05 (Vernon 1994), and setting his punishment at ten years'
imprisonment. Rodriguez was originally indicted for aggravated assault and deadly conduct by the
discharge of a firearm. Pursuant to a plea bargaining agreement in which the State dismissed the
aggravated assault charge, Rodriguez entered a plea of guilty to the deadly conduct charge. The trial
court deferred adjudication and placed Rodriguez on community supervision for a term of five years. 
On February 3, 2000, the State filed an application alleging that Rodriguez violated conditions of
his community supervision. The trial court imposed an additional condition of community
supervision. Later, on May 22, 2001, the State filed an amended application for adjudication of
guilt, alleging that Rodriguez violated the terms of his community supervision by violating the laws
in the following respects: 1) on May 19, 2001, intentionally and knowingly causing the penetration
of the female sexual organ of A. Rodriguez by his sexual organ without her consent; 2) on May 19,
2001, intentionally causing bodily injury to A. Rodriguez by striking her with his hand; and 3) on
February (sic) 19, 2001, intentionally causing bodily injury to A. Rodriguez by striking her with his
hand. The "A. Rodriguez" referred to therein is Alta Marie Rodriguez, who is married to Jose
Antonio Rodriguez. 

 After a hearing at which Floyd McElroy, Jose Rodriguez' community supervision officer, and
Alta Rodriguez testified, the trial court found the allegations in the State's motion true and formally
adjudicated Rodriguez guilty of the offense of deadly conduct as charged in the original indictment. 
The trial court sentenced Rodriguez to ten years' imprisonment. 

 On appeal, Rodriguez' sole point of error is that the ten-year sentence imposed by the trial
court is disproportionate to the offense. Rodriguez has failed to preserve this issue. He made no
objection to the sentence imposed on the ground that it was disproportionate to the crime, or on any
other ground, at the time it was imposed. In Jackson v. State, 989 S.W.2d 842, 845 (Tex.
App.-Texarkana 1999, no pet.), we held that a defendant is required to raise in the trial court at the
time the sentence is imposed any objection he might have on the ground of disproportionality. Id. 

 Even if properly preserved, the Rodriguez claim is not valid. As a general rule, Texas courts
hold that so long as the punishment imposed is within the limits prescribed by a valid statute, the
punishment is not excessive, cruel, or unusual. McNew v. State, 608 S.W.2d 166, 174 (Tex. Crim.
App. 1978); Latham v. State, 20 S.W.3d 63, 68 (Tex. App.-Texarkana 2000, pet. ref'd); Jackson
v. State, 989 S.W.2d at 846. 

 The offense of deadly conduct by the discharge of a firearm is, under Tex. Pen. Code Ann.
§ 22.05(b), a third-degree felony punishable by a term of imprisonment of not more than ten or less
than two years. Tex. Pen. Code Ann. § 12.34(a) (Vernon 1994). As Rodriguez' sentence falls
within this range, he cannot claim that his sentence is excessive or constitutes cruel or unusual
punishment. 

 Rodriguez correctly points out that we have held that a prohibition against disproportionate
punishment is recognized under the Eighth Amendment to the United States Constitution apart from
the issue of whether the punishment falls within the limits imposed by the Legislature. Latham v.
State, 20 S.W.3d at 68-69; Jackson v. State, 989 S.W.2d at 845. 

 Rodriguez stipulated the evidence as to the original offense. The reports filed as stipulated
evidence show that Rodriguez fired a gun at another person in connection with gang-related activity. 
Rodriguez stated at his original plea hearing that he was pleading guilty because he was guilty. At
the revocation hearing, Alta Rodriguez testified that he struck her and forced her, over her
objections, to have sexual relations with him. There was no testimony of the contents of the
presentence (PSI) investigation report, which was not introduced into evidence. 

 Based on the facts of the underlying offense and the nature of the violations of the conditions
of community supervision, we find that the sentence is not disproportionate to the crime. We are
not required, therefore, to compare the punishment imposed in this case with punishments imposed
for this and similar crimes in this and other jurisdictions. Further, Rodriguez produced no evidence
of sentences for similar crimes in this or other jurisdictions, either before the trial court or in his brief
to this Court. Latham v. State, 20 S.W.3d at 69. 

 Although not designated as a separate issue on appeal, Rodriguez contends in his brief that
the appeal should be abated until the PSI report is made a part of the record in this case. 

 The record indicates that a PSI report was ordered after Rodriguez' original plea hearing and
that counsel properly designated the PSI report as part of the record on appeal. At the revocation
hearing, neither side referred to this report when arguing on an appropriate punishment at the
punishment stage of the trial. The PSI report is not part of the mandatory record that the trial court
clerk is required to provide in every criminal appeal. Tex. R. App. P. 34.5(a)(2). The appellate rules
also state that in the case of both the clerk's record and the reporter's record, if something relevant
is omitted, the trial court, the appellate court, or any party may direct the clerk of court or the court
reporter, as the case may be, to prepare, certify, and file in the appellate court a supplement
containing the omitted portion. Tex. R. App. P. 34.5(c)(1), 34.6(d). There is no question of our
authority in this case to order the record supplemented with the PSI report. Ruffin v. State, 3 S.W.3d
140, 145 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd). 

 However, we decline to abate the appeal and order the record supplemented. Rodriguez has
failed to demonstrate how he was harmed by the absence of the report from the record. Clearly he
could have requested that the record be supplemented, filed a motion with this Court requesting
supplementation, or made a separate issue on appeal contending that the record was not complete. 
In Ruffin v. State, the appellant contended that the trial court erred in failing to order a PSI report,
to which the State responded that there was such a report, but that it was not in the appellate record
because neither party introduced it into evidence. Further, appellant contended that the PSI report
was defective because it did not contain the required alcohol and drug evaluations. It is clear that
in Ruffin v. State an actual copy of the report would be necessary for the Houston Court of Appeals
to rule on these questions. Upon the production of the report in the record, the first issue was
resolved, and upon a reading of that report, the second issue was resolved. Ruffin v. State, 3 S.W.3d
at 145. 

 In this case, Rodriguez fails to demonstrate prejudice or harm from the absence of the report
in the record. For example, he does not argue that a specific item or items shown in that report and
not considered by the trial court would require that his maximum sentence be mitigated. (1)

 We find no reversible error. The judgment of the trial court is affirmed.


 William J. Cornelius

 Chief Justice


Date Submitted: January 8, 2002

Date Decided: January 31, 2002


Publish
1. This is certainly not to condone or excuse the failure of the clerk or reporter to include
documents, specifically requested by one of the parties, in the record on appeal.



tify; line-height: 0.416667in">            In reviewing bond settings on appeal, we are guided by Article 17.15 of the Texas Code of
Criminal Procedure, and we are to reverse a lower court's determination only if we find an abuse of
discretion. Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2004). That is, we will reverse
the trial court's decision only if it was made without reference to any guiding principles or was, in
other words, arbitrary or unreasonable. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990) (op. on reh'g). Even if we would have reached a different result, we should not intervene if
the trial court's ruling is within the zone of reasonable disagreement. Id. at 391. Under Texas law,
the amount of bail required in any case is within the discretion of the court, judge, magistrate, or
officer taking the bail, subject to the following rules:
1.         The bail shall be sufficiently high to give reasonable assurance that the
undertaking will be complied with.

2.         The power to require bail is not to be so used as to make it an instrument of
oppression.

3.         The nature of the offense and the circumstances under which it was
committed are to be considered.

4.         The ability to make bail is to be regarded, and proof may be taken upon this
point.

5.         The future safety of a victim of the alleged offense and the community shall
be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. In addition, the Texas Court of Criminal Appeals has
directed courts to consider the accused's work record, family and community ties, length of
residency, prior criminal record (if any), and any aggravating circumstances alleged to have been
involved in the offense the accused is charged with committing.


 Ex parte Rubac, 611 S.W.2d 848,
849–50 (Tex. Crim. App. 1981).
Evidence at Habeas Corpus Hearing
            At the habeas corpus hearing, the State introduced into evidence Officer Steve Shelley's
warrant affidavits which asserted facts on which Shelley based his belief that Henson is guilty in the
deaths of Rebecca Shifflett, Crystal Willis, and Matthew Hines, occurring while Henson and another
were in the course of committing aggravated robbery. According to Shelley's affidavit, Hines' wife
contacted police after Hines failed to return home on time and after she had found the restaurant
doors locked and Hines' car parked outside. Reportedly, the police entered the restaurant, found all
three victims in a back office, determined they had died as the result of gunshot wounds, and
recovered six shell casings from the scene.
            Shelley's affidavit contains fact allegations—reportedly coming from Henson by way of his
brother—consistent with those observed at the restaurant but which could have been known only by
someone who had been at the restaurant at the time of, or after, the homicides. Henson's brother
reportedly stated to Shelley that (1) Henson admitted to him on the day after the killings he and
another man went to the restaurant to rob it, (2) while Henson and the other man were still at the
restaurant, the other man entered the back office, shut the door, and apparently fired six shots from
a silver handgun in his possession, (3) Henson saw blood on his companion's shoes and shirt when
the companion emerged from the office, and (4) while leaving the scene, Henson accepted an
envelope containing approximately $400.00 in cash.
            Without controverting the warrant affidavits, the defense called Henson's father as its sole
witness, presenting evidence of Henson's lifelong Texarkana residence and of his employment in
various jobs since attending high school. The evidence also indicated that, although Henson has a
brother living overseas and a sister living elsewhere in Texas, the other members of Henson's
immediate and extended family live in Texarkana. Henson's father testified that he could arrange
to pay only $2,500.00 toward posting Henson's bond, that Henson himself has no assets except a car
worth $500.00, and that no other family members are in a position to help post bond. On cross-examination, Henson's father admitted not having spoken with a bondsman about posting bond for
Henson. 
Representative Cases
            Contending the bond set in this case is excessive, Henson cites numerous appellate court
decisions—none of which are more recent than 1991—in support of his contention that reasonable
bail should not exceed $50,000.00. In fact, Henson argues, the Texas Court of Criminal Appeals
"has yet to condone a bail amount even approaching seven figures, even in a capital case," citing
Ludwig v. State, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991). The State responds by citing more
recent decisions in which courts of appeals have upheld bail amounts set as high as $1,000,000.00
in cases where defendants were charged with having committed the offense of capital murder. See,
e.g., Ex parte Saldana, No. 13-01-00360-CR, 2002 Tex. App. LEXIS 536 (Tex. App.—Corpus
Christi Jan. 24, 2002, no pet.) (not designated for publication), overruled in part on other grounds,
Ramos v. State, 89 S.W.3d 122, 126 n.13 (Tex. App.—Corpus Christi 2002, no pet.); Ex parte
Brown, No. 05-00-00655-CR, 2000 Tex. App. LEXIS 4656 (Tex. App.—Dallas July 13, 2000, no
pet.) (not designated for publication). In still other cases cited by the State, courts of appeals have
upheld bail settings ranging from $250,000.00 to $500,000.00. See, e.g., Ex parte Chachere, No.
03-01-00404-CR, 2002 Tex. App. LEXIS 453 (Tex. App.—Austin Jan. 25, 2002, no pet.) (not
designated for publication); Ex parte Richardson, No. 05-99-01899-CR, 2000 Tex. App. LEXIS 715
(Tex. App.—Dallas Jan. 31, 2000, pet. ref'd) (not designated for publication).
            In Brown, the Fifth District Court of Appeals concluded Brown failed to show the
$1,000,000.00 bond set by the lower court was excessive. Brown, 2000 Tex. App. LEXIS 4656, at
*3–5. The only evidence available to that court, however, was the seriousness of the offense itself,
the possible range of punishment, some of the details of aggravating circumstances, and
uncontroverted testimony that Brown posed a threat to his estranged wife and to the community in
general. Id. at *4–5. We also note Brown wielded a gun and admitted he personally committed the
violent crime with which he was charged. Id. Unlike Henson, Brown failed to present any testimony
relating to the factors laid out for consideration in either Article 17.15 or in Rubac, as discussed
above. Therefore, the record contained no evidence regarding Brown's work record, community ties,
length of residency in Texas, or his ability to make bail. Id.
            Although evidence in these categories was offered for the court's consideration in Ex parte
Saldana, the Thirteenth District Court of Appeals still held there was no abuse of discretion in
setting a $1,000,000.00 bond. Saldana, 2002 Tex. App. LEXIS 536, at *15. Saldana was a lifelong
resident of Corpus Christi, who voluntarily surrendered himself on discovering that a warrant was
outstanding for his arrest. For these reasons, and because he was regularly employed before his
arrest and had family and community ties to the area, he contended it was an abuse of discretion for
the court to deny his request for bond reduction. Id. at *14. Weighing these factors against the
extremely violent nature of the offense, Saldana's family's ability to previously post a $500,000.00
bond, his membership in the violent Raza Unida gang, and other evidence suggesting he was a flight
risk and a continuing threat to the community, the court ultimately determined that the bond set was
not excessive. Id. at *15–16.
            Unlike the facts presented in Brown and Saldana, where there was no evidence presented
regarding the excessiveness of the bond set or the evidence supporting a reduction was so far
outweighed by the violent nature of the crime, the appellant's criminal history, and the ongoing threat
to the community, the facts in Chachere and Richardson supported a reduced bond amount. Noting
that a $700,000.00 bond was particularly high, even where the appellant was indicted for solicitation
of capital murder, the Third District Court of Appeals reversed a lower court, ordering bond reduced
to $250,000.00. Chachere, 2002 Tex. App. LEXIS 453, at *9–11. Evidence in that case showed (1)
the relative stability of Chachere's employment, family, and community ties; (2) his compliance with
court orders in other matters; and (3) no prior criminal record. Id. at *11. In Richardson, the Fifth
District Court of Appeals upheld a $500,000.00 bond, giving special weight to the nature and
circumstances of the offense committed, and stressing the significance of the appellant's confession
to having deliberately planned and carried out the murder for which he was charged. Richardson,
2000 Tex. App. LEXIS 715, at *4–5.
            In this case, the trial court cited Ex parte Chavfull, 945 S.W.2d 183 (Tex. App.—San
Antonio 1997, no pet.), as authority for setting a $750,000.00 bond for each of the three counts of
capital murder. We attach significance to the fact that Chavfull not only personally killed during a
robbery, but also had a prior conviction, was suspected in other crimes, and was known to have
previously associated with dangerous people.


 Id. at 186–87. These key factors distinguish Chavfull
from the allegations against Henson.
            In another Ex parte Brown, 959 S.W.2d 369 (Tex. App.—Fort Worth 1998, no pet.), we find
an appellant more similarly situated to Henson in that this Brown was accused of participating in a
robbery in which a victim was killed. Although Brown participated in the robbery, the evidence
indicated he stood by as his confederate strangled and stomped the victim to death. Id. at 370. There
was no evidence Brown had been convicted of a crime or accused of participating in other crimes
or of previously fraternizing with dangerous people; nevertheless, considering his relative mobility, 
 
the violence of the crime, and the potential threat to the community, the Second District Court of
Appeals upheld a $500,000.00 bond. Id. at 372–73.
Analysis
            Ultimately, the appropriate amount of bail must be determined on a case-by-case basis. 
Certain similarities between the case at bar and those already discussed allow for comparison, yet
none of the decisions previously cited directly address the appropriate amount of bail under the
circumstances before us. We conclude the bond set in this case is not supported by relevant caselaw.
            Henson presented at least some evidence regarding Article 17.15 and Rubac factors. There
is no evidence Henson has previously been able to post a significant bond or has ever had occasion
to do so. The record contains no evidence Henson has ever been convicted, charged, or linked with
criminal activity, was part of a gang, exhibited prior violent behavior, or previously associated with
violent people. The evidence also fails to suggest Henson personally wielded the murder weapon;
instead, he was reportedly outside the office door when the fatal shots were fired. Testimony at the
habeas corpus hearing also indicates that Henson's family and community ties to the area are fairly
strong, that he is a lifelong Texarkana resident, and that his family resources are limited. We also
see evidence of family stability in Henson's brother coming forward with the report that led the
authorities to charge Henson.
            On the other hand, we are mindful of the gravity of the crime committed in that, unlike the
situations presented in Chachere and Richardson, where the offenses committed included solicitation
of capital murder or capital murder of a single individual, this case alleges the intentional killing of
three individuals, apparently for financial gain. While Henson may not have been the shooter, there
is no indication that his companion's reportedly having the weapon at the scene was a surprise to
him. In fact, the evidence suggests that, after hearing the shots and seeing his companion emerge
from the back office with blood on his shirt and shoes, Henson nevertheless left the scene with him
and received from him a share of the money taken from the restaurant. Even the evidence touching
on factors other courts have used to reduce or support lower bond amounts is somewhat
unsatisfactory. The only witness offering such testimony at the habeas corpus hearing was Henson's
father, who offered testimony quite similar to parental testimony previously referred to by the Fourth
District Court of Appeals as "inconclusive."


 Chavfull, 945 S.W.2d at 186.
            In the absence of evidence that Henson personally committed the violence in this case,
previously committed or has been previously charged with other crimes, was guilty of prior violent
behavior or prior association with violent people, or intended or anticipated the killings in this case,
we conclude the setting of a $750,000.00 bond per count is without precedent, and the amount
should be reduced. Considering the nature of the offense and the circumstances under which it was
committed, however, caselaw clearly supports setting bond at a level sufficiently high to guard the
future safety of the community. The uncontroverted warrant affidavits set forth a violent,
unprovoked killing of three innocent and unsuspecting individuals during the commission of an
aggravated robbery. The evidence of Henson's Rubac factors is weak, and Henson faces the
possibility, if convicted, of either life in prison or the death penalty. See Maldonado v. State, 999
S.W.2d 91, 95 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) ("In considering the nature of the
offense, it is proper to consider the possible punishment.") (quoting Ex parte Charlesworth, 600
S.W.2d 316, 317 (Tex. Crim. App. 1980)).
            Under the circumstances, we hold the amount of the bond set by the trial court is unsupported
by legal precedent. We order that the bond be reduced to $500,000.00 for each of the three counts
of capital murder, for a total bond of $1,500,000.00.
 
                                                                                    BY THE COURT
Date Submitted:          February 19, 2004
Date Decided:             March 17, 2004

Publish