In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00062-CR
______________________________


RAMIRO SANCHEZ DELACRUZ, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30525-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Ramiro Sanchez Delacruz pled guilty to driving while intoxicated (DWI), a third degree
felony. The jury assessed his punishment at ten years' incarceration and a $3,000.00 fine. Delacruz
appeals, alleging that the sentence was excessive and disproportionate to the crime for which he was
convicted. We affirm the judgment of the trial court.
            Delacruz has not preserved his complaint for our review. To preserve a complaint for
appellate review, an appellant must have presented the trial court with a timely request, objection,
or motion stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a)(1)(A). Here,
when the trial court imposed Delacruz's sentence, he failed to object, preserving nothing for our
review. See Hookie v. State, 136 S.W.3d 671, 679–80 (Tex. App.—Texarkana 2004, no pet.);
Rodriguez v. State, 71 S.W.3d 778, 779 (Tex. App.—Texarkana 2002, no pet.); Jackson v. State, 989
S.W.2d 842, 845 (Tex. App.—Texarkana 1999, no pet.). Delacruz failed to present the trial court
with the contention that the ten-year sentence is punishment disproportionate to the offense
committed. Not having done so, he cannot present the issue to this Court. 
            Even if the issue was preserved, we do not find error. Felony driving while intoxicated is
classified as a third degree felony with a punishment range of imprisonment for not more than ten
years or less than two years and a fine not to exceed $10,000.00. Tex. Pen. Code Ann. § 12.34
(Vernon 2003). Delacruz's sentence is within the statutory range provided by law.
            Traditionally, as long as the punishment assessed is within the range prescribed by the Texas
Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. See, e.g., Jordan
v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); Samuel v. State, 477 S.W.2d 611, 614 (Tex.
Crim. App. 1972). However, the United States Supreme Court's decision in Solem v. Helm, 463 U.S.
277, 292 (1983), held the Eighth Amendment prohibits sentences that are disproportionate to the
crime committed. The Solem Court provided a test which required a court's proportionality analysis
to be guided by objective criteria, including (1) the gravity of the offense and the harshness of the
penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences
imposed for commission of the same crime in other jurisdictions. See id.
            The United States Supreme Court again addressed the proportionality analysis in Harmelin
v. Michigan, 501 U.S. 957 (1991). As this Court noted in Davis v. State, 905 S.W.2d 655, 664–65
(Tex. App.—Texarkana 1995, pet. ref'd), Harmelin modified the Solem test. Although five of the
justices in Harmelin rejected the Solem test, seven still supported an Eighth Amendment prohibition
against grossly disproportionate sentences. Id. at 664.
            In Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.—Texarkana 1999, no pet.), we clarified
Solem's proportionality analysis as modified by Harmelin. We recognized that, under the United
States and Texas Constitutions, (1) a prohibition against "grossly disproportionate" sentences
survives independently of legislative punishment ranges, and (2) a modified Solem analysis applies. 
Id. at 846. Under our decision in Jackson, we first make a threshold comparison of the gravity of
the offense against the severity of the sentence, and then consider whether the sentence is grossly
disproportionate to the offense. Id.; see also Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring). 
Only if we find the sentence is grossly disproportionate to the offense should we then consider the
remaining Solem factors and compare the sentence received to sentences for similar crimes in the
same jurisdiction and to sentences for the same crime in other jurisdictions. Jackson, 989 S.W.2d
at 846; see Harmelin, 501 U.S. at 1005; see also Alberto v. State, 100 S.W.3d 528, 530 (Tex.
App.—Texarkana 2003, no pet.); Fluellen v. State, 71 S.W.3d 870, 873 (Tex. App.—Texarkana
2002, pet. ref'd); Latham v. State, 20 S.W.3d 63, 69 (Tex. App.—Texarkana 2000, pet. ref'd).
            Delacruz argues that he was eligible for community supervision, having no previous felony
convictions, that he had quit drinking alcoholic beverages, and that he was only twenty-seven years
of age, and, therefore, the sentence is disproportionate to the offense. We disagree. Delacruz was
stopped at approximately 2:00 a.m. He brought his vehicle to a complete stop in the inside
northbound lane of Highway 259. His blood alcohol content registered .198 and .195 on the
breathalyzer tests. He had two prior convictions for DWI offenses within the past two years. 
Delacruz admitted providing alcohol to an eighteen-year-old passenger who was passed out in the
truck. The passenger told the police he had consumed ten alcoholic beverages that night. Given the
record in this case, we cannot say the severity of the sentence was grossly disproportionate to the
gravity of the crime. Moreover, there is no evidence in the record comparing the sentence with the
sentences imposed against other defendants in this or other jurisdictions who committed a similar
offense. See Fluellen, 71 S.W.3d at 873; Latham, 20 S.W.3d at 69; Davis, 905 S.W.2d at 664–65.
            For the reasons stated, we affirm the trial court's judgment.
 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          December 13, 2004
Date Decided:             January 4, 2005

Do Not Publish

  



kay. That's your opinion, correct?


 A. Yes, ma'am.

 

 Q. And as I understand it, that opinion is based on the fact that
back in 1982 you sold some 7.7 acres to Mitchell Oil Company for $12,000
an acre, correct? 


 A. Yes, ma'am. 


Yet, when Mr. Harrison was questioned by his own attorney outside the jury's presence,
he testified $12,000.00 was his asking price "right after I bought it" in 1980. But, as the
State points out, when Mr. Harrison's attorney asked him, "Is your opinion of the market
value of your property based solely on the fact that you actually sold some of it to Mitchell
Oil two years after you bought the property?" Mr. Harrison answered, "Yes." 

 When Mr. Harrison testified before the jury, he elaborated about how he arrived at
the $12,000.00 per acre value. When asked, "[W]hat did you do to come up with what you
thought to be the market value?" Mr. Harrison answered, "Well, there's some property sold. 
Direct north there's a First National Bank, there's a half a block there, and I based it on that
partly, and that - that's where I come up with my decision." Mr. Harrison agreed with his
counsel that he arrived at this valuation shortly after he bought the property in 1980. 
However, Mr. Harrison further testified that in his opinion the market value of his property
did not increase between the time he initially thought it was worth $12,000.00 per acre and
the time of the condemnation. 

 In the previous opinion, we held Mr. Harrison's valuation of his land was insufficient
to support the jury's findings because it was improperly based on a remote sale. However,
at this trial, Mr. Harrison expanded his testimony to include the fact that he did not feel the
market value of his property had increased. Therefore, although the origin of
Mr. Harrison's valuation of his property may have been based on a sale that is now remote,
his opinion of the value of his property at the time of the condemnation was based on his
opinion that the land had not increased in value. 

 Moreover, at another point in the trial, Mr. Harrison testified he was born and reared
in Gilmer, and returned to Gilmer after his military service in the 1940s. He further testified
he had "invested in land and sold it" as a means of income. It was reasonable for the jury
to infer that Mr. Harrison used his lifelong residency in Gilmer and his past experience in
investing and selling land as an additional basis for his valuation of his property.

 Generally, a property owner can testify to the market value of his or her property,
even if the owner could not qualify to testify about the value of similar property belonging
to someone else. Porras v. Craig, 675 S.W.2d 503, 504 (Tex. 1984). Because the totality
of Mr. Harrison's testimony supports the inference that his opinion concerning the value of
his land was not based solely on a remote sale, we hold it was not an abuse of discretion
to permit him, as the landowner, to express that opinion before the jury. The State's
contention to the contrary is overruled. 

 As its fourth point of error, the State contends the trial court erred in denying its
motion for mistrial based on counsel for the Harrisons improperly telling the jury the court
of appeals had approved the use of the comparable sales utilized by their appraiser. The
following testimony, elicited from the Harrisons' appraiser by their counsel, was the basis
for the State's objection and request for mistrial:

 [MR. AMMERMAN (Harrisons' attorney)]: Since Mr. Wendlandt [one
of State's counsel] thinks it important that I provided you these comparable
sales, I want you to explain to the jury fully and completely, in complete
detail, how I came to - what that involved.


 [MR. MANNING (appraiser)]: Those sales apparently had been
utilized in a prior lawsuit, I guess, that they were used and had been
approved by the Court -


 MR. WENDLANDT: Your Honor, I'm going to object to this. This
completely mischaracterizes what occurred. This gentleman is not qualified
as a lawyer. And again, it mischaracterized what occurred with regards to
those sales.


 MR. AMMERMAN: Judge, I didn't ask him - I didn't ask him -


 THE COURT: I didn't understand the question. I understand the
question is what involvement did you have in providing the comparables.


 MR. AMMERMAN: What was his understanding when I gave him
those, what was the history.


 THE COURT: I'm going to overrule the objection.


 [MR. MANNING]: They came out of another appraiser's report that
had been approved by the courts and that he had utilized it in a prior lawsuit
on this particular case. And all you did was give me those papers that had
been approved.


 [MR. AMMERMAN]: By the Court of Appeals?


 [MR. MANNING]: Yes, sir. 


 The State objected, and the trial court stated, "Well, I don't know whether it was
approved by the Court of Appeals or not. I don't want to get into that, I don't want to put
any stamp of approval by some Court of Appeals." When the State asked the jury to be
instructed about what to consider from the above testimony, the trial court instructed the
jury to limit the witness' testimony to how he got the comparable sales used in his appraisal
and to "[c]ompletely disregard any opinion by the Court of Appeals either up or down." The
State did not request any further instructions. 

 The conduct of the Harrisons' counsel in suggesting that the sales used by their
appraiser had been approved by this Court was improper. Nonetheless, the jury must be
presumed to have obeyed the instruction of the trial court. Walker v. Tex. Employers' Ins.
Ass'n, 155 Tex. 617, 291 S.W.2d 298, 302 (1956). A determination of whether the error
probably caused the rendition of an improper judgment by influencing the jury to return a
verdict it probably would not otherwise have returned is to be made from an examination
of the record as a whole. Id. at 301. We presume the jury obeyed the trial court's strong
admonition to "[c]ompletely disregard" whether the court of appeals had approved the
comparable sales, and in light of the record as a whole, we conclude it was not error for
the trial court to deny the State's motion for mistrial. 

 As its fifth point of error, the State contends the trial court erred in denying its motion
for judgment notwithstanding the verdict and its motion for new trial because there was no
evidence, or in the alternative, insufficient evidence to support the jury's answer to
Question No. 1, which asked, "From a preponderance of the evidence, what do you find
to be the Market Value of the 15.809 acres of the property owners' land, including
improvements thereon, condemned for highway purposes on the date of taking, May 2,
1996, considered as severed land?" The jury answered $118,567.50. 

 When deciding a no-evidence point, we must consider all the evidence in the record
in the light most favorable to the party in whose favor the verdict has been rendered, and
we must apply every reasonable inference that could be made from the evidence in that
party's favor. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). An
insufficiency point requires the reviewing court to consider and weigh all the evidence. 
State v. Ralph Watson Oil Co., 738 S.W.2d 25, 26 (Tex. App.-Texarkana 1987, writ
denied). The testimony of the Harrisons' appraiser that the property in question had a
value of $152,191.00 and the testimony of Mr. Harrison, as the landowner, that his property
was worth $12,000.00 per acre provide sufficient evidence to support the jury's answer to
Question No. 1. 

 Even so, we must consider whether the testimony of the Harrisons' appraiser 
regarding the two residential lots was harmful error. The Harrisons conceded at oral
argument the admission of this testimony was improper. See Tex. R. App. P. 44.1(a)(1). 
The State contends this evidence probably did cause the rendition of an improper verdict
by the jury, arguing this evidence caused the jury to improperly value the Harrisons'
property as lots and not as an entire parcel. 

 Citing Lower Nueces River Water Supply District v. Collins, the State contends this
constitutes reversible error. Lower Nueces River Water Supply Dist. v. Collins, 357 S.W.2d
449, 452 (Tex. Civ. App.-San Antonio 1962, writ ref'd n.r.e.). One of the most hotly
contested issues in Collins was whether the land in question was capable of being
subdivided. Id. at 451. The landowners introduced plats which illustrated how their land
could be subdivided into lots; these plats were color coded to indicate the most desirable
lots. Id. All of the valuation testimony in Collins was based on subdividing the acreage as
illustrated by the plats. Id. at 452. The appeals court held the plats were inadmissible and
found their admittance to be reversible error. Id. 

 When testifying about the two residential lots in this case, the Harrisons' appraiser
said one lot sold for $10,500.00 and the other sold for $10,400.00, and then answered
affirmatively when asked, "So if you look at Mr. Harrison's property and he divided the 15
acres up into one and a half acres, the price per acre would be 10,4 or 10,5 per acre?"

 The general rule in condemnation cases is that, when the property condemned is
raw acreage, it is improper to admit evidence of hypothetical, nonexistent subdivisions. 
Boswell v. Brazos Elec. Power Coop., Inc., 910 S.W.2d 593, 601 (Tex. App.-Fort Worth
1995, writ denied). Therefore, it would be wrong to value the Harrisons' property according
to its worth as subdivided lots. Yet, even though the Harrisons' appraiser answered
affirmatively to the above question, it was only a small part of his testimony. In fact, he
ultimately testified the highest and best use for the property was either commercial or
industrial, not residential. In light of the record as a whole, the testimony of the Harrisons'
appraiser concerning the two residential lots did not likely cause the rendition of an
improper verdict. The jury's answer to Question No. 1 was substantially less than the fair
market value placed on the property by the Harrisons' appraiser. The admission of his
testimony concerning the residential lots was therefore harmless error.

 We affirm the judgment. 


 Donald R. Ross

 Justice


Date Submitted: December 12, 2002

Date Decided: January 24, 2003

1. The 15.809 acres consisted of two tracts: Part 1 was 13.843 acres, and Part 2 was
1.966 acres.

2. State v. Harrison, No. 06-98-00007-CV, 1998 Tex. App. LEXIS 7668 (Texarkana
Dec. 11, 1998, no pet.) (not designated for publication).
3. A 1982 sale to Mitchell Oil Company.