

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00101-CR

---

WILLIAM HUNTER WARD, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1222942

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

William Hunter Ward entered pleas of true to allegations that he violated the terms and conditions of his court-ordered community supervision. The trial court accepted Ward's pleas, adjudicated him guilty, and sentenced him to ten years' confinement in prison.[1] In his sole point of error, Ward contends that the trial court abused its discretion by assessing a ten-year sentence and by failing to consider alternatives to that sentence. For the reasons below, we affirm the trial court's judgment of conviction.

## I.       Background

On February 28, 2013, Ward pled guilty to the offense of delivery of a controlled substance in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(b), 481.134(d) (West 2017). Initially, the trial court deferred a finding of guilt and placed Ward on deferred adjudication community supervision for a period of ten years, along with ordering a $2,000.00 fine, court costs, and conditions of community supervision.

On June 19, 2013, the State moved to proceed to adjudication of Ward's guilt, alleging, in part, that Ward (1) failed to abstain from the possession or use of alcoholic beverages and controlled substances, (2) failed to report to his community supervision officer as ordered, (3) failed to pay his community supervision fees, (4) failed to pay assessed fines, court costs, and restitution, (5) failed to perform community service, and (6) failed to attend Moral Reconation Therapy (MRT). On July 11, 2013, the trial court found that the allegations in the State's motion were true, granted the State's motion, adjudicated Ward guilty, and sentenced him to ten years'

---

[1]The trial court also assessed restitution in the amount of $140.00.

2

confinement in prison. The trial court indicated, however, that it would consider reinstating Ward's community supervision in the future.

On December 31, 2013, the trial court ordered Ward's return from prison and then suspended the remainder of his sentence and placed him on shock community supervision. Once again, the trial court ordered Ward to abide by several conditions of community supervision, many of which he had previously been ordered to follow on deferred adjudication community supervision.

On September 6, 2017, the State filed a second motion to revoke community supervision. In the second motion, the State alleged that, among other things, Ward violated the conditions of his community supervision by smoking marihuana, failing to complete community service, failing to pay court costs and fees, and failing to successfully complete a drug and alcohol abuse program. Ward entered pleas of true to the allegations contained in the State's second motion. Following a lengthy hearing on October 4, 2017, the trial court modified, but did not revoke, Ward's community supervision.[2]

On May 1, 2018, the State filed a third motion to revoke Ward's community supervision. In the third motion, the State alleged that Ward had tested positive for marihuana, methamphetamine, and amphetamine and that he had admitted to smoking marihuana two or three weeks before a drug test. The State also alleged that Ward failed to report to his community supervision officer on two occasions. Ward entered written pleas of true to the State's allegations

---

[2]In an effort to assist Ward in the successful completion of his community supervision, the trial court waived the previously assessed fine and court costs, the balance on his court-appointed attorney fees, and the requirement that Ward perform 180 hours of community service. Ward was ordered to comply with the remainder of his community supervision conditions.

against him in the third motion. On May 21, 2018, the trial court held a contested sentencing hearing to assess Ward's sentence. After the close of evidence, the trial court revoked Ward's community supervision, sentenced him to ten years' confinement in prison, and ordered him to pay restitution in the amount of $140.00. This appeal followed.

## II.    Discussion

Ward concedes that the trial court's revocation of his community supervision was not in error. He contends, however, that the trial court abused its discretion when it sentenced him to ten years in prison because the violations he committed did not support such a sentence. He also contends that the trial court failed to consider other alternatives. According to Ward, "there were several other ways of punishing [him] without imposing the statutorily-prescribed maximum." Specifically, Ward alleges, "The court failed to meaningfully consider the one approach (faith-based rehabilitation) that had not been tried, and which, judging from the success of defendant's own sister, enjoyed a prospect of success."

In support of his position, Ward directs us to the following statements made by the trial court during the October 2017 hearing on the State's second motion to revoke his community supervision:

> If you smoke weed again while you're on probation, I'm sending you to prison for ten years. Let me just put that out there. Okay? If you smoke weed while you're on probation, I'm sending you to prison for ten years. Don't come in here and tell me anything else. I've heard all I need to hear.[3]

---

[3]However, after making its statement, the trial court also explained, "And I don't know the last time I have been so all over the map as to what I'm going to do. In my mind, at one point several times today, you were going to prison for ten years; five, three, four, all over the place."

Ward maintains that, during the May 2018 hearing, the trial court merely "followed through" with the statement it made during the October hearing, thereby failing to consider the full range of punishment or other lesser sentencing alternatives. We disagree.

The Constitutional mandate of due process requires a neutral and detached judicial officer who will consider the full range of punishment and mitigating evidence. *See Gagnon v. Scarpelli*, 411 U.S. 778, 788–87 (1973). A trial court denies due process when it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes a predetermined punishment. *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983), *overruled on other grounds by De Leon v. Aguilar*, 127 S.W.3d 1 (Tex. Crim. App. 2004). In the absence of a clear showing to the contrary, we presume that the trial court was neutral and detached. *Fielding v. State*, 719 S.W.2d 361, 366 (Tex. App.—Dallas 1986, pet. ref'd) (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. [Panel Op.] 1982)).

In this case, it is clear from the record that the trial court did not impose a predetermined sentence and did not fail to consider alternative or lesser punishment. In fact, the record demonstrates quite the contrary. The trial court had already continued Ward's community supervision on two occasions, and even modified his conditions on one occasion in hopes that he would successfully complete his period of supervision. Although the trial court reminded Ward of the statement it had made in October, it also explained that it would consider any mitigating evidence Ward presented during the May hearing in an effort to determine the appropriate punishment.[4] As a result, Ward presented four witnesses on his behalf, including himself. The

_____

[4]The trial court stated,

5

trial court subsequently determined that Ward's position "[fell] a little flat because we were just here months ago hearing basically the same thing." Only after considering the evidence and the prior opportunities it had given him, the trial court sentenced Ward to ten years' confinement in prison. For these reasons, we conclude that the trial court did not predetermine Ward's sentence.

Ward also states that a lesser sentence would have been "more appropriate considering the relative mildness of the underlying crime and then-current violations." Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *See Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Ward's sentence falls within the applicable range of two to ten years' confinement in prison.[5]

However, that does not end our inquiry. A prohibition against grossly disproportionate punishment survives under the Eighth Amendment to the United States Constitution apart from any consideration of whether the punishment assessed is within the range established by the Legislature. U.S. CONST. amend. VIII; *see Solem v. Helm*, 463 U.S. 277, 290 (1983); *Harmelin v.*

---

And as I always am -- was in October, am today -- I'm all ears, as they say, and certainly willing to listen to what evidence may be there to compel me to do something differently, having heard an incredibly presented case by both sides last October.

. . . .

I don't know whether I will give the ten years or something less.

[5]Delivery of less than one gram of methamphetamine is a state-jail felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(b). If the offense occurs, "in, on, or within 1,000 feet of any real property that is owned, rented, or leased to a school or school board," the punishment range for delivering less than one gram of methamphetamine is enhanced to that of a third-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.134(d). The sentencing range for a third-degree felony is not more than ten years or less than two years, and a fine not to exceed $10,000.00. TEX. PENAL CODE ANN. § 12.34 (West 2011).

*Michigan*, 501 U.S. 957 (1991) (Scalia, J., plurality op.); *Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App.—Texarkana 1999, no pet.). *Solem* suggested, as a three-part test, that an appellate court should consider: (1) the gravity of the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *See Solem*, 463 U.S. at 292.

However, in *Harmelin*, the Court raised questions about the viability of the *Solem* three-part test. In fact, it was subsequently held that proportionality survived *Harmelin*, but that the *Solem* three-part test did not. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). In light of *Harmelin*, the test has been reformulated as an initial threshold comparison of the gravity of the offense with the severity of the sentence; and then, only if that initial comparison created an inference that the sentence was grossly disproportionate to the offense, should there be a consideration of the other two *Solem* factors—sentences for similar crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *Id.*; *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.).

In this case, we do not believe that the sentence was grossly disproportionate to the gravity of the offense. Yet, even if it were, there is no evidence in the record from which we are able to compare Ward's sentence to the sentences imposed on other persons in Texas or on persons in other jurisdictions who committed a similar offense. *See Latham v. State*, 20 S.W.3d 63, 69 (Tex. App.—Texarkana 2000, pet. ref'd); *Davis v. State*, 905 S.W.2d 655, 664–65 (Tex. App.—

Texarkana 1995, pet. ref'd).  Without such evidence, the record before us does not support Ward's claim of demonstrable error.  *See Jackson*, 989 S.W.2d at 846.

We overrule Ward's point of error.

**III.     Conclusion**

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:        August 31, 2018
Date Decided:          September 18, 2018

Do Not Publish