In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00134-CR


______________________________




SERGIO DOMINGUEZ, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 19,247-2006




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 When the door to apartment thirteen of the Lake Hollybrook Apartments in Wood County
was opened to the two officers from the Wood County Sheriff's Department, Deputy Wes Criddle
immediately smelled the strong odor of marihuana coming from inside the apartment. Criddle and
his fellow officer, Lieutenant J. L. Miller, had been dispatched to the location in response to an
anonymous tip concerning loud noises coming from, and possible narcotics use occurring in, the
apartment. From outside the closed door, the officers had heard "a lot of noise coming from inside"
the apartment. During the one or two minutes between the time the officers knocked on the door and
the time the door was opened to them, they heard several occupants running around inside, engaging
in "rapid activity." The officers' subsequent warrantless search of the apartment yielded various
controlled substances and the prosecution of at least one of the apartment's occupants, Sergio
Dominguez, Jr.

 Dominguez filed a motion to suppress the resulting evidence of controlled substances, but
his motion was denied. Dominguez pled guilty to possessing, with intent to distribute, more than
four grams, but less than 200 grams, of cocaine. Dominguez appeals his resulting ten-year deferred
adjudication, urging only that the trial court erroneously denied his motion to suppress. We affirm
the trial court's judgment.

 "[W]hen reviewing a trial court's decision to deny a motion to suppress, an appellate court
'should afford almost total deference to a trial court's determination of the historical facts that the
record supports especially when the trial court's fact findings are based on an evaluation of credibility
and demeanor.'" Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (quoting Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "An appellate court 'should afford the same
amount of deference to trial court's rulings on 'application of law to fact questions,' also known as
'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation
of credibility and demeanor.'" Id. 

 In this case, the reporter's record of the suppression hearing occupies 115 pages of testimony
and argument of counsel. Only Criddle testified at the hearing. Thus, the trial court's implied fact-findings, as well as its application of the law to facts, necessarily turned on that court's evaluation
of Criddle's credibility and demeanor. (1) We must, therefore, afford almost total deference to the trial
court's decision to uphold the search because it is an issue that presents a mixed question of law and
fact.

 Criddle, a fifteen-year veteran of law enforcement, testified that, on December 17, 2005,
when he was a deputy for the Wood County Sheriff's Department, he was dispatched to the
apartments in response to an anonymous tip. Criddle joined Miller, and together they went to
investigate the tip. On arrival at the apartments, they heard "a lot of noise coming from inside"
apartment thirteen. The officers knocked on that apartment's door, announced themselves, and could
then hear people inside the apartment shouting profanities and running around inside. After a one-
or two-minute delay, someone inside the apartment finally opened the door. Once the door opened,
Criddle immediately smelled "the strong odor of marijuana coming out of the apartment." Criddle
testified he immediately recognized the distinctive smell, which to him provided probable cause to
believe criminal activity was occurring inside the apartment. Criddle and Miller subsequently
entered the apartment.

 Inside, the officers ordered the six people that were in the front of the apartment to sit in the
living room--to protect the officers' safety, according to Criddle. Miller then performed a protective
sweep of the remainder of the apartment. During this visual scan, Miller saw the remains of several
marihuana cigarettes in ashtrays around the apartment. He also heard someone flushing a toilet
inside one of the apartment's two bathrooms. Criddle testified that, based on their experience as
police officers, he and Miller suspected someone was inside the bathroom disposing of narcotics or
other illegal contraband. Eventually, a twelve-year-old juvenile exited the bathroom and was
instructed to join the others in the living room. Five of the suspects were eventually placed in
handcuffs--again, for the safety of the two officers, according to Criddle--while the officers
continued their investigation. 

 In a second bathroom, Miller saw several "cookies" of suspected crack cocaine inside a
plastic bag. (2) Criddle later weighed these "cookies" and determined they weighed approximately 100
grams. A field test gave a preliminary indication that the "cookies" contained cocaine. 

 Miller subsequently read the Miranda (3) warnings to the suspects, asked each individual if he
or she understood those rights, and received acknowledgment from each that he or she understood. 
None of the suspects requested an attorney or invoked the right to remain silent. Miller eventually
asked an individual named Isaias Santos, III, for consent to search the apartment, which Santos gave. 
Santos had earlier claimed the apartment was his. Criddle testified that Santos' consent was freely
and voluntarily given and was not the product of threats, promises, or coercion on the part of the
officers. 

 Following receipt of Santos' consent, the officers conducted a more thorough search. Criddle
began by searching the kitchen. In that room, Criddle found a box of plastic bags, a couple of
electronic scales, and other items of suspected drug paraphernalia. In one of the bedrooms, Criddle
found a small plastic bag of suspected crack cocaine hidden under a mattress. This quantity of
suspected cocaine weighed approximately one tenth of a gram. 

 Generally, the Fourth Amendment to the United States Constitution prohibits the government
and its agents from searching the person or the property of individual citizens without a search
warrant. McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); see U.S. Const. amend IV. 
There are, however, exceptions to the Fourth Amendment's warrant requirement. One such
exception arises when the government's representative, typically a police officer, has accumulated
sufficient facts that, when those facts are considered in the aggregate, the officer has probable cause
to believe that a crime is being committed and when exigent circumstances justify searching the
place without first taking time to secure a search warrant from a neutral magistrate. Estrada v. State,
154 S.W.3d 604 (Tex. Crim. App. 2005); McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App.
1991). Stated more succinctly, for a warrantless search of a private location to be upheld under
judicial scrutiny, there must be sufficient evidence of both probable cause and exigent circumstances.

 Probable Cause. "[P]robable cause is the accumulation of facts which, when viewed in their
totality, would lead a reasonable officer to conclude, with a fair probability, that a crime has been
committed or is being committed by someone." Parker v. State, 206 S.W.3d 593, 599 (Tex. Crim.
App. 2006). The odor of marihuana can provide an officer with probable cause regarding the
presence of illegal narcotics within a particular location, as opposed to being on a particular
individual. Estrada, 93 S.W.3d at 608-09 ("odor of marijuana . . . was indeed an element or layer
in determining whether Officer Baladez had probable cause to believe an offense was being
committed"); Taylor v. State, 20 S.W.3d 51, 55 (Tex. App.--Texarkana 2000, pet. ref'd). In this
case, there was the strong odor of marihuana coming from the apartment's open front door, as well
as several occupants running around inside the apartment engaging in "rapid activity" during the
minute or two before the door had been opened. The odor confirmed the original reason for
dispatching the officers to the apartment: possible narcotics use. We conclude that these
considerations, when viewed in the light most favorable to the trial court's ruling, were enough to
establish the officers reasonably believed that marihuana--a controlled substance, the possession
of which is illegal, see Tex. Health & Safety Code Ann. § 481.121 (Vernon 2003)--would be
found inside that apartment. The trial court, therefore, did not err by determining the officers had
probable cause to enter the apartment. 

 We now turn to whether there was also evidence of exigent circumstances.

 Exigent Circumstances. There are three categories of exigent circumstances that justify an
officer's warrantless entry into a private residence: (1) the need to render aid or assistance to a
person whom the officer reasonably believes is in need of such assistance, (2) the need to prevent
the destruction of evidence or contraband, and (3) the need to protect the officer from a person or
persons whom the officer reasonably believes to be present and armed and dangerous. Parker, 206
S.W.3d at 597 n.16 (citing McNairy, 835 S.W.2d at 107). This case involves the second
justification.

 The United States Supreme Court has noted that narcotics and other illegal contraband can
be disposed of in a relatively short period of time. United States v. Banks, 540 U.S. 31, 40 (2003). 
We conclude that, in the case now before us, the officers had several considerations that could
reasonably lead them to believe that, absent police intervention, evidence of contraband would be
destroyed. First, there was the one- or two-minute delay before the door was opened. Second, the
officers heard "rapid activity" inside the apartment following their knock on the door while they
waited that minute or two for the door to be opened. Third, the officers immediately detected the
pungent odor of marihuana when the door was opened. Fourth, that odor confirmed the anonymous
tip about illegal narcotics use in the apartment. We agree with the trial court that these
considerations validated the officers' reasonable belief that exigent circumstances permitted the
warrantless entry into the apartment. (4)

 What the Officers Found. Once inside the apartment, the two officers immediately found
five or six persons in the living room. They had also heard people running about inside the
apartment during the minute or two before the occupants opened the front door. It was, therefore,
reasonable for the officers to first conduct a "protective sweep" of the area to protect the safety of
the officers or others, given that they did not know how many other people were inside or whether
any were armed. See Maryland v. Buie, 494 U.S. 325, 334 (1990); Reasor v. State, 12 S.W.3d 813,
815-16 (Tex. Crim. App. 2000). If, during a protective sweep, a police officer comes across
contraband, the criminality of which is readily apparent, he or she need not turn a blind eye to such
evidence; instead, such evidence may be immediately seized. Texas v. Brown, 460 U.S. 730, 738-39
(1983); Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

 Such is what occurred in this case. Criddle testified that he secured the suspects who were
present in the living room of the apartment while Miller conducted a protective sweep of the
apartment for other persons. During the sweep, Miller found three people: one inside a bathroom,
two inside a bedroom. Miller also found the crack cocaine which the record before us suggests was
in plain view in a trash bag. Because such evidence was in plain view, and because the officers'
initial entry and protective sweep of the apartment was authorized by an exception to the Fourth
Amendment, our law authorized Miller to seize the suspected illegal drugs, which the record
suggests the officers immediately recognized as cocaine. See, e.g., Horton v. California, 496 U.S.
128, 135 (1990) ("Where the initial intrusion that brings the police within plain view of such an
article is supported, not by a warrant, but by one of the recognized exceptions to the warrant
requirement, the seizure is also legitimate."). It necessarily follows, then, that the officers could
arrest Dominguez and the other occupants for their joint possession of these illegal narcotics. 

 Following his arrest, Dominguez provided the officers with a custodial confession. On
appeal, Dominguez has not challenged the voluntariness of that confession; instead, he asserts only
that it is fruit of an arrest made without a warrant or probable cause. But, because the officers did
have probable cause to arrest, Dominguez cannot prevail in his challenge to the trial court's ruling
on the admissibility of Dominguez's confession.

 On the record before us, we cannot say the trial court erred by concluding the officers had
probable cause to enter the apartment. Nor can we say the lower court's decision regarding the
existence of exigent circumstances was erroneous. On entry, the officers performed a protective
sweep of the apartment, during which the record suggests the officers found illegal narcotics in plain
view. The plain-view doctrine authorizes the seizure of any contraband found by officers in plain
sight, even if such contraband is found during a warrantless search (so long as that warrantless search
is otherwise authorized by an exception to the Fourth Amendment). Dominguez's subsequent arrest
was supported by probable cause, and there is no suggestion in the record before us that his custodial
confession was the product of an illegal arrest. 

 Accordingly, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 28, 2007

Date Decided: March 15, 2007


Do Not Publish


1. The trial court did not enter written findings of fact and conclusions of law regarding the
suppression hearing. In such a case, we will affirm the trial court's judgment on the motion to
suppress if that ruling is reasonably supported by the record and is correct on any theory of law
applicable to the case. Cisneros v. State, 165 S.W.3d 853, 856 (Tex. App.--Texarkana 2005, no
pet.) (citing Romero v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990); Shaw v. State, 122
S.W.3d 358, 363 (Tex. App.--Texarkana 2003, no pet.)).
2. The officers did not see any visible marihuana during this protective sweep. Later, they saw
evidence that marihuana had been flushed down the toilet. 
3. Miranda v. Arizona, 384 U.S. 486 (1966).
4. Although post-entry discoveries cannot subsequently be relied on to validate pre-entry
determinations regarding the existence of exigent circumstances, we note that the officers' hunches
regarding the potential destruction of contraband were, in this case, correct. Shortly after entering
the apartment, Miller heard a toilet being flushed. When he later inspected that bathroom, he saw
evidence that marihuana had been flushed down the toilet.


:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-047-CR%20Jacobs%20v.%20State2%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00047-CR

                                                ______________________________

 

 

                                 CHRISTOPHER E. JACOBS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 71st Judicial District Court

                                                           Harrison County, Texas

                                                         Trial Court
No. 09-0291X

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Christopher E.
Jacobs appeals his conviction on multiple counts on his open plea of guilty to
each count.  He was sentenced to two life
terms for two counts of aggravated sexual assault, twenty years each on two
counts of sexual performance by a child, and ten years for possession of child
pornography.  

            Jacobs
attorney on appeal has filed a brief which discusses the record and reviews the
proceedings in detail, combined with a discussion of one issue that counsel
nonetheless believes may be arguable, although without meritconstitutionally
disproportionate sentencing.  Counsel has
thus provided a professional evaluation of the record demonstrating why, in
effect, there are no arguable grounds to be advanced.  This meets the requirements of Anders v. California, 386 U.S. 738
(1967); Stafford v. State, 813 S.W.2d
503 (Tex. Crim. App. 1981); and High v.
State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
mailed a copy of the brief to Jacobs on July 15, 2010, informing Jacobs of his
right to file a pro se response and of his right to review the record.  Counsel has also filed a motion with this
Court seeking to withdraw as counsel in this appeal.  Jacobs has now filed his pro se response,
alleging that his confession was coerced, his punishment was unjust, the search
and seizure at his residence was illegal and there was no probable cause to do
so, his arrest was illegal, and the search warrant was illegal.

            We have determined that this appeal
is wholly frivolous.  The possible issue proposed
by counsel was not preserved for review, see
Williamson v. State, 175 S.W.3d 522, 52324 (Tex. App.Texarkana 2005, no
pet.), and even had it been, there is nothing to support an argument that the
punishments assessed (within the statutory ranges) is constitutionally grossly
disproportionate to the gravity of the offenses.  Id.; see Latham v. State, 20 S.W.3d 63, 69 (Tex. App.Texarkana 2000,
pet. refd).  We have independently
reviewed the clerks record and the reporters record,  in light of Jacobs pro se response, and we
agree with counsel that no arguable issues support an appeal.  See
Bledsoe v. State, 178 S.W.3d 824, 82627 (Tex. Crim. App. 2005).  

            In a
frivolous appeal situation, we are to determine whether the appeal is without
merit and is frivolous, and if so, the appeal must be dismissed or
affirmed.  See Anders, 386 U.S. 738.   We
affirm the judgment of the trial court.[1]

            

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          March
28, 2011

Date Decided:             March
29, 2011

 

Do Not Publish           











[1]Since
we agree this case presents no reversible error, we also, in accordance with Anders, grant counsels request to
withdraw from further representation of appellant in this case.  No substitute counsel will be appointed.  Should appellant wish to seek further review
of this case by the Texas Court of Criminal Appeals, appellant must either
retain an attorney to file a petition for discretionary review or appellant must
file a pro se petition for discretionary review.  Any petition for discretionary review must be
filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court.  See
Tex. R. App. P. 68.2.  Any petition for discretionary review must be
filed with this Court, after which it will be forwarded to the Texas Court of
Criminal Appeals along with the rest of the filings in this case.  See
Tex. R. App. P. 68.3.  Any petition for discretionary review should
comply with the requirements of Rule 68.4 of the Texas Rules of Appellate
Procedure.  See Tex. R. App. P.
68.4.